VANITA GUPTA
Acting Assistant Attorney General
Civil Rights Division
DELORA L. KENNEBREW (GA Bar No. 414320)
Chief
KAREN D. WOODARD (MD Bar / No number issued)
Deputy Chief
LOUIS WHITSETT (DC Bar No. 257626)
Senior Trial Attorney
Employment Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone:  (202) 305-0942
Facsimile:  (202) 514-1005
Email:  Louis.Whitsett@usdoj.gov

*Attorneys for the Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TIMOTHY STONER, | Civil Action No. _____ |
| Plaintiff, | |
| v. | COMPLAINT |
| PIMA COMMUNITY COLLEGE, | JURY TRIAL DEMANDED |
| Defendant. | |

### **COMPLAINT**

Plaintiff Timothy W. Stoner ("Stoner"), by the undersigned attorneys, makes the following averments:

1. This civil action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, *et seq.* ("USERRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b)(3).

3.      Venue is proper under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b) because Defendant Pima Community College ("PCC") maintains a place of business in this judicial district and a substantial part of the events giving rise to this action occurred in this judicial district.

## PARTIES

4.      Stoner resides in Tucson, Arizona, within the jurisdiction of this Court.

5.      PCC is a public educational institution with its principal place of business in Tucson, Arizona, within the jurisdiction of this Court, and is a private employer within the meaning of 38 U.S.C. § 4323(i).

6.      PCC is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

## BACKGROUND FACTS

**Stoner's Military and Civilian Employment History**

7.      PCC is a public educational institution with six locations in the Tucson, Arizona metropolitan area that offers post-secondary school certificates and associate's degrees in a variety of educational fields.

8.      PCC's Department of Public Safety is a state-certified law enforcement agency with approximately sixty employees, including about 35 sworn police officers.

9.      Stella Bay became Police Chief of PCC's Department of Public Safety in approximately 2007, and held that position during all relevant periods herein.

10. In 1993, Stoner enlisted in the United States Army and served for three years on active duty. Stoner has been a member of the Army National Guard for the last eighteen years. Through the present, Stoner has served a total of twenty-one years of military service, service that includes tours of active duty in Afghanistan and Iraq. His last fifteen years of military service with the Army National Guard includes supervisory duties, assignments and responsibilities.

11. Stoner has worked for PCC as a Police Officer in its Department of Public Safety since August 27, 2001.

12. Stoner applied for the assignment of Lead Police Officer in 2006 and was selected for that position by former Police Chief Barbara Harris. As a Lead Police Officer, Stoner's duties included: assisting the Police Sergeant with supervision of line police officers, assigning or reviewing staff's work, providing regular guidance and training to staff, and supervising the squad in the Sergeant's absence.

13. In or about 2009 or 2010, PCC abolished the Lead Police Officer assignment and the duties of that position were incorporated into the newly created supervisory position of Police Corporal.

**The 2010 Selection Process for Police Corporal**

14. PCC posted an advertisement for an unspecified number of Police Corporal vacancies on or about August 27, 2010. Only current, non-probationary PCC Police Officers were eligible to apply. Stoner met the announced eligibility requirements for promotion.

15. Stoner was deployed to Afghanistan on active military duty with the Army National Guard from approximately October 2009 through October 2010.

16.     While still deployed to Afghanistan, Stoner applied for promotion to the position of Police Corporal in or about August or September 2010.

17.     During the 2010 selection process for Police Corporal, Chief Bay commented to another PCC Police Officer that Stoner was selfish to apply for promotion while volunteering for active military duty.

18.     As part of the 2010 Police Corporal selection process, Stoner took a written examination and was interviewed by a three-member Advisory Selection Group.

19.     Following the Advisory Selection Group interview, Stoner was one of six finalists selected for a final interview with Chief Bay and Executive Vice Chancellor Dr. David Bea.

20.     Stoner was the only finalist for the Police Corporal position who was also a member of the military.

21.     Chief Bay and Dr. Bea made the final selection decisions for the Police Corporal vacancies in the 2010 selection process.

22.     Stoner was not selected for promotion to Police Corporal as a result of the 2010 selection process.

23.     PCC promoted four of the six finalists to Police Corporal in January 2011.  PCC shortly thereafter promoted a fifth finalist to a Police Corporal position.

24.      Stoner was the only former Lead Police Officer who was not promoted to Police Corporal as part of the 2010 selection process.

25.     Stoner's military service was a motivating factor in his non-selection for promotion to Police Corporal as part of the 2010 selection process.

**The 2013 Selection Process for Police Corporal**

26.     PCC posted an advertisement for a Police Corporal vacancy in or about January 2013.

27.     In or about January 2013, Stoner again applied for promotion to the position of Police Corporal. Stoner met the announced eligibility requirements for promotion.

28.     As part of the 2013 Police Corporal Selection process, Stoner took a written examination and was interviewed by a three-member Advisory Selection Group.

29.     Following the Advisory Selection Group interview, Stoner was one of three finalists selected to proceed to a final interview with Chief Bay and Dr. Bea.

30.     Stoner was the only one of the three finalists for the Police Corporal position in 2013 who was a member of the military.

31.     In or about April 2013, during a conversation with another supervisor in PCC's Department of Public Safety, Chief Bay expressed her opinion that military service members are so used to taking orders that they cannot think for themselves and do not do well in stressful situations.

32.     Stoner became eligible to retire from the Army National Guard in or about April 2013, following twenty years of continuous military service.

33.     On or about April 23, 2013, Stoner had a final interview for the Police Corporal position with Chief Bay and Dr. Bea. During the interview, Chief Bay asked Stoner whether he intended to retire from military service as he was eligible to do that month. When Stoner said that he did not intend to retire, Chief Bay became upset and stated that Stoner had previously told her that he would retire when he became eligible. Dr. Bea did not intervene during this exchange and allowed Stoner to respond to the question.

34.     At the conclusion of the final interviews, Chief Bay and Dr. Bea met to discuss who should be selected for the Police Corporal promotion. During this meeting Chief Bay again

raised concerns about Stoner's suitability for the position because of his military service obligations.

35. After the conclusion of their meeting, Chief Bay and Dr. Bea made the final decision about their selection for promotion to Police Corporal in 2013.

36. Stoner was not selected for promotion to Police Corporal as a result of the 2013 selection process.

37. The selectee for the Police Corporal position in 2013 was not a member of the military.

38. Following the 2013 Police Corporal Selection process, Stoner filed an internal complaint with PCC alleging that PCC acted improperly by not selecting him for the position even though he was the most qualified, due to Chief Bay's expressed bias against him based on his military service.

39. PCC's Office of Human Resources conducted an internal investigation of Stoner's complaint regarding the 2013 Police Corporal selection decision and concluded that Stoner's complaint was substantiated, that Chief Bay made repeated negative references to military service during the 2013 Police Corporal selection process, and that Stoner's military service factored into Chief Bay's vote to not select Stoner for the Police Corporal position.

40. Stoner's military service was a motivating factor in his non-selection for promotion to Police Corporal in 2013.

## COUNT ONE: PCC's VIOLATION OF USERRA DURING THE 2010 POLICE CORPORAL SELECTION PROCESS

41. Plaintiff realleges and incorporates herein Paragraphs 1 through 40.

42. PCC violated Section 4311 of USERRA, 38 U.S.C. § 4311, by failing to promote Stoner to the position of Police Corporal in 2010 because of his membership in the uniformed services and/or his military service obligations.

43. PCC's violation of USERRA was willful.

44. Stoner has suffered substantial loss of earnings and other benefits of employment as a result of PCC's violation of USERRA.

## COUNT TWO: PCC'S VIOLATION OF USERRA DURING THE 2013 POLICE CORPORAL SELECTION PROCESS

45. Plaintiff realleges and incorporates herein Paragraphs 1 through 44.

46. PCC violated Section 4311 of USERRA, 38 U.S.C. § 4311, by failing to promote Stoner to the position of Police Corporal in 2013 because of his membership in the uniformed services and/or his military service obligations.

47. PCC's violation of USERRA was willful.

48. Stoner has suffered substantial loss of earnings and other benefits of employment as a result of PCC's violation of USERRA.

## PRAYER FOR RELIEF

WHEREFORE, Stoner prays that the Court enter judgment against PCC and, further, that the Court:

49. Declare that PCC's failure to promote Stoner to the position of Police Corporal in 2010 was unlawful and in violation of USERRA;

50. Declare that PCC's failure to promote Stoner to the position of Police Corporal in 2013 was unlawful and in violation of USERRA;

51.     Order PCC to fully comply with the provisions of USERRA by placing Stoner in the permanent position of Police Corporal and awarding Stoner all of the benefits of employment he would have attained had he been promoted to the position as a result of his application in 2010;

52.     Order PCC to pay Stoner for lost wages and benefits suffered by reason of PCC's violations of USERRA;

53.     Declare that PCC's violations of USERRA were willful;

54.     Order that PCC pay Stoner as liquidated damages an amount equal to the amount of his lost wages and benefits suffered by reason of PCC's willful violations of USERRA;

55.     Award prejudgment interest on the amount of lost wages and benefits found due;

56.     Enjoin PCC from taking any action with respect to Stoner that fails to comply with the provisions of USERRA; and

57.     Grant such other and further relief as may be just and proper together with the costs and disbursements of this lawsuit.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Respectfully submitted,

DATE:  October 31, 2014        Vanita Gupta
                               Acting Assistant Attorney General
                               Civil Rights Division

                               By:

                               /s/ Delora L. Kennebrew
                               DELORA L. KENNEBREW (GA Bar No. 414320)
                               Chief
                               Employment Litigation Section

/s/ Karen Woodard
KAREN WOODARD (MD Bar / No number issued)
Deputy Chief

/s/ Louis Whitsett
LOUIS WHITSETT (DC Bar No. 257626)
Senior Trial Attorney
Employment Litigation Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone:  (202) 305-0942
Facsimile:  (202) 514-1005
Email:  Louis.Whitsett@usdoj.gov

*Attorneys for the Plaintiff*